IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY L. HOVIS, JR. )<br>          **Plaintiff** )<br>           )<br>           )<br>         v. )<br>           )<br>           )<br>MICHAEL J. ASTRUE, et al, )<br>          **Defendants.** ) | C.A. No. 07-171 Erie<br><br>**District Judge McLaughlin**<br>**Magistrate Judge Baxter** |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that Plaintiff's motion for summary judgment [Document # 9] be granted. It is further recommended that the motion for summary judgment filed by the Commissioner [Document # 11] be denied. This matter should be remanded to the Social Security Administration for further proceedings.

**II.    REPORT**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Anthony Hovis (hereinafter, "Hovis") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying him benefits. Both Plaintiff Hovis and the Commissioner have filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In his brief in support of his motion for summary judgment, Plaintiff lists at least fourteen errors by the ALJ. As relief, Plaintiff seeks either the award of benefits or alternatively, remand back to the Commissioner for further proceedings. The government argues that the Commissioner's denial of benefits is supported by the substantial weight of the evidence and should be affirmed. The

1

matter has been fully briefed and is ripe for review and disposition by this Court.

### A. Procedural History

Hovis applied for Supplemental Social Security (SSI) income on July 1, 2004, the same day as the alleged onset of his disability. R. 14.[1] His application was denied initially on October 15, 2004, and on October 20, 2004, Plaintiff filed a request for rehearing before an Administrative Law Judge. A hearing was subsequently conducted before ALJ Elliot Bunce on March 15, 2006 at which Plaintiff was represented by counsel. ALJ Bunce issued an opinion denying Plaintiff's request for benefits on June 1, 2006. R. 12-20.

Plaintiff requested review of that denial by the Appeals Council on June 6, 2006. Plaintiff submitted eighty-five pages of additional evidence to the Appeals Council.[2] R. 8. The Appeals Council denied Hovis' request for review on June 27, 2007. R. 5.

As an initial matter, this Court must address the additional evidence before the Appeals Council and its place in this proceeding. This Court has the power to remand this case to the Commissioner to consider the "additional evidence" at a new administrative hearing, pursuant to Sentence Six of 42 U.S.C. § 405(g)[3] and the Third Circuit's holding in Matthews v. Apfel, 239

---

[1] The Court's recitation of relevant facts is derived from the transcript of the administrative record filed by the Commissioner as part of his answer in accordance with § 205(g) of the Act, 42 U.S.C. § 405(g), which is referred to hereinafter as "R." Additional citations will appear as necessary.

[2] In his brief in support of his motion for summary judgment, Plaintiff argues that he submitted new evidence to the Appeals Council on June 27, 2007, the same day the Appeals Council denied the appeal. Document # 10, page 1. However, the record reflects that Plaintiff submitted additional medical records to the Appeals Council on four separate occasions: August 7, 2006 ("AC-1"; R. 280-293); on October 25, 2006 ("AC-2"; R. 294-345); again on October 25, 2006 ("AC-3"; R. 346-353); and on November 29, 2006 ("AC-4"; R. 354-364), all well before the Appeals Council denied his request for review.

[3] Sentence Six provides: "*The court may*, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may *at any time order additional evidence to be taken before the*

F.3d 589 (3d Cir. 2001). The Matthews Court held that when the Appeals Council has denied review of an ALJ's decision, "the district court may affirm, modify or reverse the Commissioner's decision, with or without a remand, based upon the record that was before the ALJ." Matthews, 239 F.3d at 593. However, "when [a] claimant seeks to rely on evidence that was not before the ALJ," the district court may remand to the Commissioner if the plaintiff shows the evidence is 1) new **and** 2) material **and** 3) if there was good cause why it was not previously presented to the ALJ. Id.

Additional evidence is "material" if there is a reasonable possibility that it could have changed the outcome of the Secretary's determination. Szubak v. Sec'y of HHS, 724 F.2d 831, 833 (3d Cir. 1984). The additional evidence submitted here included eighty-five pages of medical records spanning the time period between May 1, 2002 through November 1, 2006. The new evidence includes documentation as to Plaintiff's ongoing medical issues, including updates from Seneca Medical Center confirming continuing dizziness and headaches with various medication changes (R. 283-294); updates from Dr. Dixon confirming worsening back pain (R. 285-288); updates from Dr. McLaughlin regarding the dizziness wherein he suspected migraine headaches as an etiology and recommended a trial of Topamax (R. 281); and updates from the Regional Counseling Center, with a treatment plan of June 12, 2006, which diagnosed major depressive disorder, severe recurrent, and generalized anxiety disorder (R. 357-364). This evidence is material as it may have affected the Commissioner's decision in this matter.

While the additional evidence is considered "material," it is not all "new." Additional evidence is considered "new" if it was not available to the claimant at the time of the administrative proceeding. Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990). In this case, much of the 85 pages of additional evidence was not new as it predated the ALJ's hearing.

Even if this Court were to find the additional evidence to be both new and material, Plaintiff has not even alleged good cause as to why he failed to introduce it into the record prior

---

*Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ...*" 42 U.S.C. § 405(g) (emphasis added).

3

to the ALJ's written decision. Matthews, 239 F.3d at 593, citing Szubak, 745 F.2d 831, 833 (3d Cir. 1984). See also Smith v. Commissioner of Social Security, 80 Fed. Appx. 268, 270 (3d Cir. 2003).

For the foregoing reasons, this Court concludes that this case should not be remanded to the Commissioner pursuant to Sentence Six of 42 U.S.C. § 405(g). And, importantly for the remaining legal analysis in this case, this Court cannot consider any of the later submitted additional evidence (i.e., pages 283-364 of the record) as none of it was before the ALJ.

### B. The ALJ's decision

In his June 1, 2006, opinion, ALJ Bunce concluded:

1. The claimant has not engaged in substantial gainful activity at any time relevant to this decision.

2. The claimant has the following severe impairments: degenerative disc disease, dizziness, depression, anxiety, and borderline intellectual functioning.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the criteria of an impairments [sic] listed in Appendix 1.

4. The claimant has the residual functional capacity to perform work that does not require: exertion above the sedentary level; or exposure to hazards; or more than simple, routine, repetitive tasks, with one- or two-step instructions; or strict production quotas, defined as the requirement to produce a specified number of units of work in a specified period of time; or more than occasional contact with the public and coworkers; and that allows the alternating of sitting and standing.

5. The claimant has no past relevant work.

6. The claimant was born on February 5, 1966, and was 38 years old on the alleged disability onset date, which is defined as a younger individual.

7. The claimant has the equivalent of a high-school education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

4

>    10. The claimant has not been under a disability, as defined in the Act, at any time through the date of this decision.

R. 14-20.

### C.    Legal Standards

#### 1.    Jurisdiction

District Court review of an ALJ's decision regarding disability benefits is limited in scope. 42 U.S.C. § 405(g) provides "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party ... may obtain review of such decision by a civil action." A decision of the Commissioner becomes final when the Appeals Council affirms an ALJ decision, denies review of an ALJ decision, or when a claimant fails to pursue the available administrative remedies. Aversa v. Secretary of Health & Human Services, 672 F.Supp. 775, 777 (D.N.J.1987); see also 20 C.F.R. § 404.905.  This Court has jurisdiction to review the case under § 405(g) because the Commissioner's decision became final upon the Appeals Council's denial of review of the ALJ's decision.

#### 2.    Standards applicable to the ALJ's decision

In reviewing the Commissioner's decision, this Court may not decide facts anew, reweigh the evidence, or substitute this court's judgment for that of the Commissioner or, by extension, the ALJ.  See Herron v. Shalala, 913 F.3d 329, 333 (7th Cir. 1994).  Rather, this Court must affirm a decision if it is supported by substantial evidence and the ALJ has made no error of law.  42 U.S.C. § 405(g); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 564-65 (1988) quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938).  See also Jesurum v. Sec'y of U.S. Dep't of Health and Human Servs., 48 F.3d, 114, 117 (3d Cir. 1995); Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).  Plaintiff argues that the ALJ's decision is not supported by substantial evidence.

5

A disability is defined under the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (Supp. 2002); 20 C.F.R. § 404.1505(a) (2002). A claimant is unable to engage in substantial gainful activity when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

The Commissioner must perform a five-step sequential evaluation process to make disability determinations under the regulations. See 20 C.F.R. § 416.920. If the claimant fails to meet the requirements at any step in the process, the Commissioner may conclude that the claimant is not disabled under the Act. The ALJ must determine, in order: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the claimant's severe impairment meets or equals the criteria of an impairment listed in 20 C.F.R pt. 404, subpt. P, app. 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy in light of his age, education, work experience and residual functional capacity. See 20 C.F.R. §§ 404.1520, 416.920; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000).

In this case, the ALJ evaluated the case under these guidelines and determined, at step five, that Plaintiff Hovis could perform certain work available in the national economy. R. 19-20. Specifically, the ALJ concluded that: (1) Hovis was not currently employed in substantial gainful activity; (2) that he had several impairments, including degenerative disc disease, dizziness, depression, anxiety, and borderline intellectual functioning, that were severe; (3) that these impairments did not meet the criteria for listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (1999), and that Hovis retained the capacity to perform a significant range of work; and (4) that Hovis had no history of past relevant work. Id.

Plaintiff has the burden of establishing that he is disabled under the Act. See 20 C.F.R.

6

§§ 404.1512, 416.912. The ALJ should consider the claimant's ability to meet certain mental and physical demands of jobs when assessing his residual functional capacity. 20 C.F.R. §§ 404.1545(a), 416.945(a).

### D. Legal Discussion and Analysis

Plaintiff Hovis has specified myriad errors that he claims were made by the ALJ in reaching the decision denying benefits.[4] Most of Plaintiff's challenges to the ALJ's opinion

---

[4] In particular, Plaintiff argues:

1. The ALJ failed to properly apply the law, regulations and rulings regarding the evaluation of expert medical opinion and evidence.
    A) the ALJ failed to properly apply the treating physician rule, and
    B) the ALJ failed to accord appropriate weight and/or properly evaluate based upon the Listings, the thirteen test neuropsychological evaluation of a specialist.

2. The ALJ erred in failing to call a medical advisor where, as here, the uncontradicted mental evidence fairly raised the question of whether Hovis met/equaled a Listing; the ALJ cannot reject or override the findings and opinions of a medical expert absent contradictory medical evidence.

3. The ALJ renders medical analysis contrary to the uncontradicted mental health medical evidence, from the treating and consulting physicians, and is thus invalid.

4. The ALJ errs in rendering and reaching speculative inferences from uncontradicted medical reports, which reports are contrary to the position he infers. As a corollary, he could not properly do this without calling a medical advisor.

5. The ALJ's findings are not supported by the medical evidence. There is no contradictory mental health evidence. The ALJ cannot, thus, adopt some but not all of the findings and opinions of these mental health specialists. The ALJ having rejected the state agency assessment, he cannot properly create an exertional residual functional capacity by mischaracterizing and impermissibly rejecting Dr. Dixon's opinions absent contrary medical evidence.

6. The ALJ rejects the treating opinion of Dr. Romero, the psychiatrist, without pointing to other medical evidence of record. Furthermore, the treating opinion he rejects is overwhelmingly supported by a thirteen test, three session consultative

7

neuropsychological evaluation which he impermissibly rejects out of hand.

7. Finding of fact 2 is reached in derogation of law and is not supported by substantial evidence.

   A. The ALJ fails to find degenerative joint disease, despite the fact that the state agency disability determination made such a finding.
   B. The ALJ fails to find lumbar spinal stenosis despite consistent long term treating evidence and opinion to that effect along with objective study.
   C. The ALJ fails to find that Hovis suffers from dementia NOS, ADHD and Personality Disorder as found after objective testing by Dr. Albert Scott and as confirmed by the treating professional at the Regional Counseling Center.

8. The ALJ commits an error of law with regard to his failure to appropriately make findings and determine whether Hovis met/equaled a Listing.

   A. He rejects the findings and opinions of Dr. Scott and Dr. Romero, consulting specialist and treating specialist respectively, allegedly because their findings and opinions are not reflected elsewhere in the record. To the contrary, the Office of Vocational Rehabilitation psychological, the record of Dr. Dixon, the records of Dr. Beals and Hovis' reports and testimony are all consistent with their findings and opinions.
   B. Contrary to the ALJ's declaration, the record is clear that Hovis does receive treatment from a therapist, Ms. Tina Bloom and Dr. Romero and Janice Pastorious.
   C. The Office of Vocational Rehabilitation records document onset of depression as early as 2000, longitudinal support for the findings and opinions of Dr. Scott and Dr. Romero.
   D. Since there was no contradictory mental health evidence organic or non-organic, the ALJ cannot fashion his own residual functional capacity, accepting some but rejecting some of the findings and limitations imposed by Dr. Scott and Dr. Romero.
   E. The ALJ erroneously rejects the findings and opinions of Dr. Scott and Dr. Romero allegedly because they are "isolated reports." To the contrary, Dr. Scott performed a three session, thirteen test comprehensive neuropsychological test, the test administered sanctioned by the mental health regulations.
   F. The school records and the OVR records provide longitudinal support for the findings and opinions of Dr. Scott and Dr. Romero.

9. The ALJ, unbelievably, rejects Dr. Scott's brain damaged diagnosis allegedly because there is no objective evidence to support it. Additionally, while he notes the huge IQ discrepancy, sixteen points, he fails to in any way analyze the possible relationship of

revolve around the lack of weight given to the opinions of Plaintiff's treating physicians, in particular those providing opinions involving the Plaintiff's mental functioning. A review of the mental functioning evidence is appropriate here.

### 1. Mental functioning evidence

In January of 2000, Drs. Meyer and Uran, both psychologists, conducted a vocational evaluation of Plaintiff to examine him for a possible learning disability and/or mental retardation. R. 277. They opined that Plaintiff needed to avoid "excessive strenuous vocational placement" (R. 277) and that "given the intellectual profile alone, Anthony [Hovis] evidences little ability in terms of information processing, retention and retrieval" (R.276). Plaintiff's

---

    this discrepancy to the diagnosis of dementia. Dr. Scott's opinion of brain damage is confirmed by thirteen neuropsychological tests, three separate and distinct evaluation sessions, and the longitudinal evidence. There is no contradictory evidence.

10. Finding of fact 4 is reached in derogation of applicable law and regulation and is not supported by substantial evidence.

11. The ALJ, in material part, rejects Dr. Dixon's functional limitations allegedly because Dr. Dixon believed Hovis could lift and carry forty pounds and primarily because the ALJ believes Dr. Dixon got mixed up reading the form. [...]

12. In Finding of Fact 5, the ALJ rejects Dr. Scott's GAF score of 35 as not elsewhere supported in the record. To the contrary, it is supported not only by his three evaluation sessions, and thirteen tests, it is supported by the opinion of the treating mental health professionals.

13. The ALJ fails to make specific findings or appropriately analyze Hovis' severe problems with dizziness, lightheadedness and nausea, well documented in the treating and consulting records of his PCP and three specialists, all of whom validate the severity of the symptomology, and one of whom finds objective testing consistent with the vestibular abnormality diagnosed in this matter.

14. Findings of Fact 7, 9 and 10 and the conclusion are likewise reached in derogation of applicable law and are not supported by substantial evidence.

Document # 10.

"mild, occasional depression" was a normal response to adjustments and "diagnostic significance [of depression] is not likely." R. 276.

Dr. Albert Scott, a clinical neuropsychologist of the Regional Counseling Center, examined Plaintiff on April 27, 2005, May 13, 2005, and May 27, 2005. R. 177. Dr. Scott performed a myriad of tests upon Plaintiff on these three separate occasions. Id. The report, issued June 9, 2005, indicates that Plaintiff's "thought processes are retarded," but there is "no noticeable cognitive slippage." R. 179. On Plaintiff's MCMI-III profile, he demonstrated significant elevations on Major Depression, Dysthymia, Somatoform, Anxiety, Passive-Aggressive, Dependent, Avoidant, and Schizoid. Id. Other tests revealed that Plaintiff was suffering from a depressive disorder with an underlying personality disorder, and demonstrated some indication of brain damage. R. 180. Dr. Scott diagnosed Plaintiff as suffering from dementia[5], attention-deficit hyperactivity disorder, depression, anxiety and a personality disorder. Id. Dr. Scott concluded that Plaintiff needed to be under psychiatric care with continued mental health counseling, possibly on an antidepressant and a stimulant, and that he was "unable to work due to psychiatric and neurological factors." R.180-181.

On October 21, 2005, Physician's Assistant Janis Pastorious of the Regional Counseling Center conducted a psychiatric evaluation of Plaintiff. R. 256. Plaintiff complained of low mood, poor self-esteem, poor concentration, irritability, restlessness, and anxiety, and complained of depression for three to four years. Id. Plaintiff had been seeing a therapist and reported that therapy was helping. Id. Ms. Pastorious found Plaintiff to be depressed with a depressed affect, and assessed him as having poor self value due to his learning disability and as suffering from a neurological brain assault. Id. Ms. Pastorious also indicated that Plaintiff suffers from chronic pain which increases his depressive symptoms. Id. The diagnosis reads:

---

[5] Dementia is the loss, usually progressive, of cognitive and intellectual functions, without impairment of perception or consciousness; caused by a variety of disorders, (structural or degenerative) but most commonly associated with structural brain disease. Characterized by disorientation, impaired memory, judgment, and intellect, and a shallow labile affect.

major depressive disorder, dysthymia[6], a learning disorder, and generalized anxiety disorder (GAD). Id. Ms. Pastorious also indicated a "history of brain injury at birth." Id. Ms. Pastorious recommended that Plaintiff begin Cymbalta and Seroquel and to continue therapy. Id.

The record reflects that Plaintiff kept appointments at the Regional Counseling Center in 2005 on April 7th; May 12th; June 21st; July 28th; September 1st; October 10th; October 21st; November 22nd; December 14th; and December 22nd; as well as in 2006, on January 19th; February 1st and February 14th. R. 263. The record does not contain specific treatment notes from those appointments. There is nothing in the medical record to suggest that the relationship between the Regional Counseling Center and Plaintiff had ended. The record merely ends chronologically shortly before the ALJ hearing.

On February 14, 2005, Tina Bloom, a therapist at the Regional Counseling Center authored an excuse from jury duty for Plaintiff due to "severe depression and anxiety." R. 265.

On March 1, 2006, Dr. Romero and therapist Tina Bloom of the Regional Counseling Center completed a form assessment indicating that Plaintiff was functionally unable to work. R. 267.

On March 15, 2006, at the time of the hearing before the ALJ, Plaintiff indicated that he had been taking Zoloft for two months for depression and anxiety. R. 32, 35.

### 2. The Treating Physician Rule

The reports of treating physicians should be accorded great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987); 20 C.F.R. § 404.1527(d)(2)

---

[6] Dysthymia is a chronic mood disorder manifested as depression for most of the day, more days than not, accompanied by some of the following symptoms: poor appetite or overeating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration, difficulty making decisions, and feelings of hopelessness.

11

(providing for controlling weight where treating physician's opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in the record).[7]  An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided.  Davis v. Apfel, 149 F.Supp.2d 99, 108 (D. Del. 2001) quoting Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985).  Where an ALJ chooses to reject the opinion of a treating physician, he must adequately explain in the record his reason for doing so. Sykes v. Apfel, 228 F.3d 259, 266 (3d Cir. 2000) ("Where the Secretary is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence.").

### 3.     Analysis

Plaintiff argues that the ALJ impermissibly rejected most of the mental functioning evidence, especially the report of Dr. Albert Scott.

The record reflects that Dr. Scott issued a report on June 9, 2005.  R. 177.  Dr. Scott indicates that he performed a battery of psychological tests upon Plaintiff on three separate occasions. Id.  The report indicates that Plaintiff's "thought processes are retarded," but there is "no noticeable cognitive slippage."  R. 179.  On Plaintiff's MCMI-III profile, he demonstrated significant elevations on Major Depression, Dysthymia, Somatoform, Anxiety, Passive-Aggressive, Dependent, Avoidant, and Schizoid.  Id.  Other tests revealed that Plaintiff was suffering from a depressive disorder with an underlying personality disorder, as well as some indication of brain damage.  R. 180.  Dr. Scott diagnosed Plaintiff as suffering from dementia, attention-deficit hyperactivity disorder, depression, anxiety and a personality disorder.  Id.  Dr. Scott concluded that Plaintiff needed to be under psychiatric care with continued mental health

---

[7] However, "an ALJ need not defer to a treating physician's opinion about the ultimate issue of disability because that determination is an administrative finding reserved to the Commissioner." Gantt v. Commissioner Social Sec.,205 Fed.Appx. 65, 67 (3d Cir. 2006) quoting 20 C.F.R. § 404.1527(e).

counseling, possibly an antidepressant and a stimulant, and that he was "unable to work due to psychiatric and neurological factors." R.180-181.

The record further reflects that in October of 2005, Ms. Pastorious, diagnosed Plaintiff with major depressive disorder, dysthymia, a learning disorder and generalized anxiety disorder, and indicated there was a history of brain injury at birth. R. 256.

In March of 2006, Dr. Romero, a psychiatrist, and Tina Bloom, a therapist, both of the Regional Counseling Center, completed a questionnaire indicating generally that Plaintiff had extreme and marked limitations in several vocational areas. R. 267 - 270.

There is no contradictory evidence regarding mental health. Yet in impermissibly discounting the evaluations of Dr. Scott, et al, the ALJ indicates:

> I have not given Dr. Scott's findings or the form filled out by Ms. Bloom and Dr. Romero significant weight other than my determination that the claimant has borderline intellectual functioning. **The diagnosis of depression, anxiety, and a personality disorder are not reflected elsewhere in the medical record.** During the relevant period, the claimant has not been hospitalized and has not received emergency-room treatment for a mental impairment, and does not receive treatment from a mental-health specialist. [...] As discussed, there are not treatment records from their facility, and their form falls short of establishing disability within the scope of the residual functional capacity adopted here, which limits the claimant to simple, low-stress tasks and to no more than occasional contact with others in the workplace. I find these provisions to be a reasonable accommodation of his mental-health impairments.

R. 16 (emphasis added).

The ALJ's rejection of the findings and opinions of medical staff from the Regional Counseling Center is error. The ALJ's decision in this regard is not based on objective contradictory medical evidence, but is instead specifically based on the lack of other medical records, including lack of hospitalization, lack of emergency room treatment and lack of episodes of decompensation. R. 17. The lack of a medical record does not equate with contradictory medical evidence. Here, Plaintiff was specifically diagnosed with dementia, dysthymia, and attention-deficit hyperactivity disorder, as well as depression, anxiety, and a learning disorder by Dr. Scott and PA Pastorious, yet the ALJ indicates that he has not given these diagnoses any "significant weight other than [his own] determination that the claimant has borderline intellectual functioning." R. 16. The ALJ has substituted his own judgment for that

of the treating medical professionals by disregarding the mental health diagnoses without citing any contradictory evidence. This he may not do under the law. See Davis, 149 F.Supp.2d at 108, quoting Plummer, 186 F.3d at 429 ("In choosing to reject the treating physicians' assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.").

Additionally, in discounting the mental health evidence, the ALJ indicates that Plaintiff did not "receive treatment from a mental-health specialist" (R. 16) when the record clearly indicates otherwise. Plaintiff was seen at the Regional Counseling Center thirteen times over the ten-month period immediately preceding the hearing. R. 263.

Accordingly, the motion for summary judgment should be granted in favor of Plaintiff and this case should be remanded to the Commissioner for further proceedings.

### III.    CONCLUSION

It is respectfully recommended that Plaintiff's motion for summary judgment [Document # 9] be granted. It is further recommended that the motion for summary judgment filed by the Commissioner [Document # 11] be denied. This matter should be remanded to the Social Security Administration for further proceedings.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Failure to timely file objections may constitute a waiver of appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

S/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief United States Magistrate Judge

Dated: September 2, 2008